Eric Lechtzin (I.D. # 248958)
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Facsimile: (267) 685-0676
elechtzin@edelson-law.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAX WINER, individually and on behalf of all others similarly situated, | Case No.: |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **DEMAND FOR JURY TRIAL** |
| vs. | |
| WISNER BAUM, LLP, | |
| Defendant. | |

Plaintiff Max Winer ("Plaintiff") brings this Class Action Complaint on behalf of himself, and all others similarly situated, against Defendant Wisner Baum, LLP ("Wisner Baum" or "Defendant"), alleging as follows, based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to him, which is based on personal knowledge:

1. Entities that gather and retain sensitive, personally identifiable information ("PII") and protected health information ("PHI"), including, *inter alia*, names, addresses, Social Security numbers, driver's license numbers, bank account details and medical records and information (collectively, "Private Information") owe a duty to the individuals to whom that data relates. This duty arises because it is foreseeable that the exposure of consumers' Private Information to unauthorized persons—especially hackers with nefarious intentions—will cause harm to such individuals.

2. Defendant is a law firm with approximately 20 lawyers based in Los

Angeles, California.

3.    Defendant did not maintain adequate systems and procedures to ensure the security of the highly sensitive Private Information consumers entrusted to it. As more specifically described below, this Complaint concerns a recent data breach (the "Data Breach") on Wisner Baum's network that resulted in unauthorized access to the highly sensitive data of thousands of individuals whose personal and medical information was exposed.

4.    Upon information and belief, up to and through October 8, 2025, Defendant obtained Plaintiff's and Class members' Private Information and stored that Private Information, unencrypted, in an Internet-accessible environment on Defendant Wisner Baum's network, from which unauthorized actors used an extraction tool to retrieve sensitive Private Information belonging to Plaintiff and Class Members.

5.    In the data breach notice, Defendant claimed that it learned of the Data Breach on October 8, 2025, yet it waited for over 4 months before sending its data breach notices.

6.    The harm resulting from a breach of private data manifests in several ways, including identity theft and financial fraud. The exposure of a person's Private Information through a data breach ensures that such person will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives. Mitigating that risk—to the extent it is even possible to do so—requires individuals to devote significant time and money to closely monitor their credit, financial accounts, health records, and email accounts, as well as other prophylactic measures.

7.    Defendant breached its duty to protect the sensitive Private Information entrusted to it, failed to abide by its own Privacy Policy, and failed to provide sufficiently prompt notice after learning of the Data Breach. As such, Plaintiff brings

CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL

2

this Class action on behalf of himself and thousands of other consumers whose Private Information was accessed and exposed to unauthorized third parties.

8.    As a direct and proximate result of Defendant's inadequate data security, and breach of its duty to handle Private Information with reasonable care, Plaintiff's and Class members' Private Information has been accessed by hackers, potentially posted on the dark web, and exposed to an untold number of unauthorized individuals.

9.    Plaintiff is now at a significantly increased and certainly impending risk of fraud, identity theft, and similar forms of criminal mischief, a risk which may last for the rest of his life. Consequently, Plaintiff must devote substantially more time, money, and energy to protect himself, to the extent possible, from these crimes.

10.    To recover from Defendant for his sustained, ongoing, and future harms, Plaintiff seeks damages in an amount to be determined at trial, declaratory judgment, and injunctive relief requiring Defendant to: (1) disclose, expeditiously, the full nature of the Data Breach and the types of Private Information accessed, obtained, or exposed by the hackers; (2) implement improved data security practices to reasonably guard against future breaches of Private Information possessed by Defendant; and (3) provide, at its own expense, all impacted victims with lifetime identity theft protection services.

## PARTIES

11.    Plaintiff Max Winer is a resident and citizen of Marlton, New Jersey where he intends to remain. Plaintiff Winer's Private Information was stored and handled by Defendant on its systems. Since October 2025, Plaintiff noticed a significant increase in spam calls, texts and emails.

12.    As a result of Defendant's conduct, Plaintiff suffered actual damages including, without limitation, time related to monitoring their financial accounts for fraudulent activity, facing an increased and imminent risk of fraud and identity theft,

the lost value of their personal information, and other economic and non-economic harm. Plaintiff and Class members will now be forced to expend additional time, effort, and potential expenses to review their credit reports, monitor their financial accounts, and monitor for fraud or identify theft.

13.    Defendant Wisner Baum, LLP, is a law firm with its headquarters and principal place of business located at 11111 Santa Monica Blvd, Ste. 1750, Los Angeles, California 90025

14.    Defendant is a limited liability partnership formed in California and registered in good standing in California.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). The amount in controversy in this Class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's states of citizenship.

16.    This Court has personal jurisdiction over Defendant in this case because Defendant is headquartered and has its principal place of business in this District. Defendant conducts substantial business and has minimum contacts with the State of California.

17.    Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant and/or its parents or affiliates are headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

***Defendant and the Services it Provides.***

18.    Defendant is a law firm with practice areas that include class/mass actions, personal injury, aviation accidents, pharmaceutical liability, and consumer fraud cases.

19.     Plaintiff and Class Members directly or indirectly entrusted Defendant with sensitive and confidential Private Information, which includes information that is static, does not change, and can be used to commit myriad financial and other crimes.

20.     By obtaining, collecting, and storing Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that Defendant was responsible for protecting Plaintiff's' Private Information from unauthorized disclosure.

21.     Plaintiff and the Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use such Private Information solely for business purposes, and to prevent the unauthorized disclosures of the Private Information.

22.     If Plaintiff and Class Members had known that Defendant would not take reasonable and appropriate steps to protect their sensitive and valuable Private Information, they would not have entrusted it to Defendant.

***Defendant Knew the Risks of Storing Valuable Private Information and the Foreseeable Harm to its Consumers.***

23.     At all relevant times, Defendant knew it was storing sensitive Private Information and that, as a result, its systems would be an attractive target for cybercriminals.

24.     Defendant also knew that a breach of its systems, and exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose Private Information was compromised.

25.     These risks are not theoretical. The legal industry has become a prime target for threat actors.

26.     Cyberattacks have become so notorious that the FBI and U.S. Secret

Service have issued a warning to potential targets so they are aware of and prepared for a potential attack.

27.     With the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, the Identity Theft Resource Center reports that 2025 set a new record for the number of data compromises tracked in a year, up four percentage points in 2025 (3,322) from the previous all-time high in 2023 (3,202).[1]

28.     The type and breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Defendant's consumers especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

29.     Private Information is a valuable property right.[2] The value of Private Information as a commodity is measurable.[3] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[4] American companies are estimated to have spent over $19 billion on acquiring consumers'

---

[1] https://www.prnewswire.com/news-releases/identity-theft-resource-center-2025-annual-data-breach-report-record-number-of-data-compromises-in-2025-79-percent-jump-over-five-years-302668595.html (last visited February 4, 2026).

[2] *See* Marc Van Lieshout, *The Value of Personal Data*, 457 IFIP ADVANCES IN INFORMATION & COMMUNICATION TECHNOLOGY 26 (May 2015), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible …").

[3] Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle./824192.

[4] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

personal data in 2018.[5] It is so valuable to identity thieves that once Private Information has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

30.    As a result of their real value and the recent large-scale data breaches, identity thieves and cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated, and become more valuable to thieves and more damaging to victims.

31.    According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[6]

32.    Even if stolen PII does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, email

---

[5] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERTISING BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

[6] United States Government Accountability Office, Report to Congressional Requesters, Personal Information, June 2007: https://www.gao.gov/new.items/d07737.pdf (last visited February 4, 2026).

address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

33.    Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[7]

34.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

35.    Based on the value of its consumers' PII to cybercriminals and the growing rate of data breaches, Defendant certainly knew the foreseeable risk of failing to implement adequate cybersecurity measures.

***Defendant Breached its Duty to Protect its Consumers' Private Information.***

36.    On or around January 23, 2026, Wisner Baum filed a Data Breach Notification with the Office of the Maine Attorney General.[8]

37.    It is likely the Data Breach was targeted at Defendant due to its status as a law firm that collects, creates, and maintains sensitive Private Information.

38.    Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data of specific individuals, including (among other things) Plaintiff's and Class members' Private Information.

---

[7] Janice Y. Tsai *et al.*, *The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study*, 22(2) Information Systems Research 254 (June 2011), https://www.guanotronic.com/~serge/papers/weis07.pdf.

[8] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/c37cb0a9-e776-4862-9a33-20473ce33090.html (last visited February 4, 2026).

39.     Upon information and belief, and based on the type of cyberattack, it is plausible and likely that Plaintiff's Private Information was stolen in the Data Breach. Plaintiff further believes his Private Information was likely subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals.[9]

40.     As the Harvard Business Review notes, "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[10]

41.     Defendant had a duty to adopt appropriate measures to protect Plaintiff's and Class members' Private Information from involuntary disclosure to third parties.

42.     Because of the Data Breach, data thieves were able to gain access to Defendant's private systems on October 8, 2025, and were able to compromise, access, and acquire the protected Private Information of Plaintiff and Class Members.

43.     Wisner Baum had obligations created by contract, industry standards, common law, and its own promises and representations made to Plaintiff and Class Members to keep their Private Information confidential and to protect them from

---

[9] https://www.paloaltonetworks.com/cyberpedia/what-is-multi-extortion-ransomware (Typically, in a ransomware attack, the criminal actor will not only encrypt the victim's system and block access until a ransom is paid but also exfiltrate data and threaten to release it to the dark web if a ransom is not paid. This scheme is known as a double-extortion attack. This scheme is used because many "organizations overcome the threat of file encryption with a simple up-to-date backup system.").

[10] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

unauthorized access and disclosure.

44.    Plaintiff and the Class Members reasonably relied (directly or indirectly) on Defendants' sophistication to keep their sensitive Private Information confidential; to maintain proper system security; to use this information for business purposes only; and to make only authorized disclosures of their Private Information.

45.    Plaintiff's and Class Members' unencrypted, unredacted Private Information was compromised due to Defendant's negligent and/or careless acts and omissions, and due to the utter failure to protect Class Members' Private Information. Criminal hackers obtained their Private Information because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The heightened risks to Plaintiff and Class Members will remain for their respective lifetimes.

***FTC Guidelines Prohibit Defendant from Engaging in Unfair or Deceptive Acts or Practices.***

46.    Defendant is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

47.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[11]

---

[11] *Start with Security – A Guide for Business*, United States Federal Trade Comm'n (2015). https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

48.    The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[12]

49.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[13]

50.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

51.    Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

**_Cyberattacks and Data Breaches Cause Disruption and Put Consumers at an_**

---

[12] _Protecting Personal Information: A Guide for Business_, United States Federal Trade Comm'n, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personalinformation.pdf.

[13] _Id._

***Increased Risk of Fraud and Identity Theft.***

52.    Cyberattacks and data breaches at companies like Defendant are especially problematic because they can negatively impact on the daily lives of individuals affected by the attack.

53.    The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[14]

54.    That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, and to take over victims' identities to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

---

[14] *See* U.S. Gov. Accounting Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (2007), https://www.gao.gov/new.items/d07737.pdf.

55.     Theft of Private Information is serious. The FTC warns consumers that identity thieves use such stolen information to exhaust financial accounts, receive medical treatment, open new utility accounts, and incur charges and credit in a person's name.

56.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (and consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing freezes on their credit, and correcting their credit reports.[15]

57.     Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan, change a billing address so the victim no longer receives bills, open new utilities, obtain a mobile phone, open a bank account and write bad checks, use a debit card number to withdraw funds, obtain a new driver's license or ID, and/or use the victim's information in the event of arrest or court action.

58.     Identity thieves can also use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's

---

[15] *See IdentityTheft.gov*, Federal Trade Commission, https://www.identitytheft.gov/Steps (last accessed Feb. 4, 2026).

Social Security number, and/or rent a house or receive medical services in the victim's name.

59.    Moreover, theft of PII is also gravely serious because PII is an extremely valuable property right.[16]

60.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States. For example, with the PII stolen in the Data Breach, which includes Social Security numbers, identity thieves can open financial accounts, commit medical fraud, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft. These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class members.

61.    These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to PII, they *will use it.*[17]

62.    There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. Fraud and identity theft resulting from the Data Breach may go undetected until debt collection calls commence months, or even years later.

63.    For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some

_____

[16] *See, e.g.*, John T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets." (citations omitted)).

[17] *Id.*

individuals up to three years to learn that information.[18]

64.    Cybercriminals can post stolen Private Information on the cyber black market for years following a data breach, thereby making such information publicly available.

65.    Approximately 21% of victims do not realize their identity has been compromised until more than two years after it happened.[19] This gives thieves ample time to seek multiple treatments under the victim's name.

66.    Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.[20]

67.    It is within this context that Plaintiff must now live with the knowledge that his Private Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

68.    Victims of the Data Breach, like Plaintiff, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their privacy and credit because of the Data Breach.[21]

69.    As a direct and proximate result of the Data Breach, Plaintiff has had his Private Information exposed, has suffered harm, and has been placed at an

---

[18] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 JOURNAL OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

[19] *See* Medical ID Theft Checklist, https://www.identityforce.com/blog/medical-id-theft-checklist-2 (last visited February 4, 2026).

[20] *Guide for Assisting Identity Theft Victims*, FED. TRADE COMM'N, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

[21] *Id.*

imminent, immediate, and continuing increased risk of harm from fraud and identity theft. Plaintiff must now take the time and effort (and spend the money) to mitigate the actual and potential impact of the Data Breach on his everyday life, including purchasing identity theft and credit monitoring services every year for the rest of his life, placing "freezes" and "alerts" with credit reporting agencies, contacting his financial institutions and healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

70.    Moreover, Plaintiff and Class members have an interest in ensuring that their Private Information, which remains in the possession of Defendant, is protected from further public disclosure by the implementation of better employee training and industry standard and statutorily compliant security measures and safeguards. Defendant has shown itself to be wholly incapable of protecting Plaintiff's Private Information.

71.    Plaintiff and Class members also have an interest in ensuring that their personal information that was provided to Defendant is removed from Defendant's unencrypted files.

72.    Because of the value of its collected and stored data, Defendant knew or should have known about these dangers and strengthened its data security accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

***Plaintiff Suffered Damages.***

73.    Defendant received Plaintiff and Class members' Private Information in connection with providing legal services to them or on behalf of a client that services Plaintiff and Class members. In requesting and maintaining Plaintiff's Private Information for business purposes, Defendant expressly and impliedly promised, and undertook a duty, to act reasonably in its handling of Plaintiff's and

Class members' Private Information. Defendant did not, however, take proper care of Plaintiff and Class members' Private Information, leading to its exposure to and exfiltration by cybercriminals as a direct result of Defendant's inadequate security measures.

74.    For the reasons mentioned above, Defendant's conduct, which allowed the Data Breach to occur, caused Plaintiff and Class members significant injuries and harm in several ways. Plaintiff and Class members must immediately devote time, energy, and money to: (1) closely monitor their medical statements, bills, records, and credit and financial accounts; (2) change login and password information on any sensitive account even more frequently than they already do; (3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and (4) search for suitable identity theft protection and credit monitoring services, and pay to procure them. Plaintiff and Class members have taken or will be forced to take these measures to mitigate their potential damages as a result of the Data Breach.

75.    Once Private Information is exposed, there is little that can be done to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff and Class members will need to maintain these heightened measures for years, and possibly their entire lives because of Defendant's conduct.

76.    Further, the value of Plaintiff's and Class members' Private Information has been diminished by its exposure in the Data Breach. Plaintiff and Class members did not receive the full benefit of their bargain when paying for their purchases, and instead received services that were of a diminished value with Defendant. Plaintiff and Class members were damaged in an amount at least equal to the difference in the value between the services they thought they paid for (which

would have included adequate data security protection) and the services they received.

77.     Plaintiff and Class members would not have obtained services from Defendant or paid the amount they did to receive such services, had they known that Defendant would negligently fail to protect their Private Information. Indeed, Plaintiff and Class members paid for items with the expectation that Defendant would keep their Private Information secure and inaccessible from unauthorized parties. Plaintiff and Class members would not have obtained items from Defendant had they known that Defendant failed to properly train its employees, lacked safety controls over its computer network, and did not have proper data security practices to safeguard their Private Information from criminal theft and misuse.

78.     As a result of Defendant's failures, Plaintiff and Class members are also at substantial and certainly impending increased risk of suffering identity theft and fraud or other misuse of their Private Information.

79.     Further, because Defendant delayed sending mail notice of the same to Plaintiff and Class members for five and a half months, Plaintiff and Class members were unable to take affirmative steps during that time to attempt to mitigate any harm or take prophylactic steps to protect against injury.

80.     From a recent study, 28% of consumers affected by a data breach become victims of identity fraud—this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.[22]

81.     Plaintiff is also at a continued risk because their information remains in

---

[22] Stu Sjouwerman, *28 Percent of Data Breaches Lead to Fraud*, KNOWBE4, https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud (last visited Feb. 4, 2025).

Defendant's computer systems, which have already been shown to be susceptible to compromise and attack and is subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect its consumers' Private Information.

82.    In addition, Plaintiff and Class members have suffered emotional distress because of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their private information to strangers.

## CLASS ALLEGATIONS

83.    Plaintiff brings all counts, as set forth below, individually and as a Class action, pursuant to the provisions of the Fed. R. Civ. P. 23, on behalf of a Class defined as:

> All persons in the United States who had their Private Information submitted to Defendant and/or whose Private Information was compromised as a result of the data breach(es) by Defendant, including all who received a Notice of the Data Breach (the "Class").

84.    Excluded from the Class are Defendant, its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

85.    This proposed Class definition is based on the information available to Plaintiff currently. Plaintiff may modify the Class definition in an amended pleading or when they move for Class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

86.    **Numerosity – Fed. R. Civ. P. 23(a)(1)**: Plaintiff are informed and believe, and thereon allege, that there are at minimum, thousands of members of the Class described above. The exact size of the Class and the identities of the individual

members are identifiable through Defendant's records, including but not limited to the files implicated in the Data Breach, but based on public information, the Class includes thousands other individuals.

87.     **Commonality – Fed. R. Civ. P. 23(a)(2):** This action involves questions of law and fact common to the Class. Such common questions include, but are not limited to:

a.     Whether Defendant failed to timely notify Plaintiff of the Data Breach;

b.     Whether Defendant had a duty to protect Plaintiff's and Class members' Private Information;

c.     Whether Defendant was negligent in collecting and storing Plaintiff and Class members' Private Information, and breached its duties thereby;

d.     Whether Plaintiff and Class members are entitled to damages as a result of Defendant's wrongful conduct; and

e.     Whether Plaintiff and Class members are entitled to restitution as a result of Defendant's wrongful conduct.

88.     **Typicality – Fed. R. Civ. P. 23(a)(3):** Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and members of the Class all had information stored in Defendant's system, each having their Private Information exposed and/or accessed by an unauthorized third party.

89.     **Adequacy of Representation – Fed. R. Civ. P. 23(a)(3):** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex Class action litigation;

Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel have adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed. Furthermore, the interests of the Class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

90.    **Injunctive Relief, Fed. R. Civ. P. 23(b)(2):** Defendant has acted and/or refused to act on grounds that apply generally to the Class therefore making injunctive and/or declaratory relief appropriate with respect to the Class under 23(b)(2).

91.    **Superiority, Fed. R. Civ. P. 23(b)(3):** A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

92.    Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

93.    Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such

particular issues include, but are not limited to:

    a.    Whether Defendant failed to timely and adequately notify the public of the Data Breach;

    b.    Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

    c.    Whether Defendant's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

    d.    Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

    e.    Whether Defendant failed to take commercially reasonable steps to safeguard consumer Private Information; and

    f.    Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

94.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class members' names and addresses affected by the Data Breach. Defendant has already preliminarily identified Class members for the purpose of sending notice of the Data Breach.

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (Plaintiff on behalf of the Class)

95.    Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

96.    Plaintiff brings this claim individually and on behalf of the Class.

97.    Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting their Private Information in its

possession, custody, and control.

98.    Defendant's duty to use reasonable care arose from several sources, including but not limited to those described below.

99.    Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices on the part of the Defendant. By collecting and storing valuable Private Information that is routinely targeted by criminals for unauthorized access, Defendant was obligated to act with reasonable care to protect against these foreseeable threats.

100.   Defendant's duty also arose from the fact that it holds itself out as a trusted provider of legal services, and thereby assumes a duty to reasonably protect consumers' information.

101.   Defendant breached the duties owed to Plaintiff and Class members and thus was negligent. As a result of a successful attack directed towards Defendant that compromised Plaintiff and Class members' Private Information, Defendant breached its duties through some combination of the following errors and omissions that allowed the data compromise to occur:

    a.    mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of Private Information;

    b.    mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

    c.    failing to design and implement information safeguards to control these risks;

    d.    failing to adequately test and monitor the effectiveness of the

safeguards' key controls, systems, and procedures;

e.   failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

f.   failing to detect the breach at the time it began or within a reasonable time thereafter; and

g.   failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive Private Information.

102.   But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class members, their Private Information would not have been compromised.

103.   As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injuries, including, but not limited to:

a.   Theft of their Private Information;

b.   Costs associated with the detection and prevention of identity theft and unauthorized use of their Private Information;

c.   Costs associated with purchasing credit monitoring and identity theft protection services;

d.   Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.   Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach — including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

  f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

  g. Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others;

  h. Continued risk of exposure to hackers and thieves of their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' data; and

  i. Emotional distress from the unauthorized disclosure of Private Information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class members.

104. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
(Plaintiff on behalf of the Class)

105. Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

106. Plaintiff and Class Members entered into a valid and enforceable contract through which they paid money to Wisner Baum in exchange for services. That contract included promises by Defendant to secure, safeguard, and not disclose

Plaintiff' and Class Members' Private Information.

107.   Wisner Baum's Notice of Privacy Practices memorialized the rights and obligations of Wisner Baum and its clients. This document was provided to Plaintiff and Class Members in a way it became part of the agreement for services.

108.   In the Privacy Policy, Wisner Baum commits to protecting the privacy and security of private information and promises to never share Plaintiff' and Class Members' Private Information except under certain limited circumstances.

109.   Plaintiff and Class Members fully performed their obligations under their contracts with Wisner Baum.

110.   But Wisner Baum did not secure, safeguard, and/or keep private Plaintiff' and Class Members' Private Information and therefore breached its contracts with Plaintiff and Class Members.

111.   Wisner Baum allowed third parties to access, copy, and exfiltrate Plaintiff' and Class Members' Private Information without permission. Therefore, WISNER BAUM breached the Privacy Policy with Plaintiff and Class Members.

112.   Wisner Baum's failure to satisfy its confidentiality and privacy obligations, specifically those arising under the FTCA, HIPAA, and applicable industry standards, resulted in Wisner Baum providing services to Plaintiff and Class Members that were of a diminished value.

113.   As a result, Plaintiff and Class Members have been harmed, damaged, and/or injured as described herein, including in Defendant's failure to fully perform its part of the bargain with Plaintiff and Class Members.

114.   As a direct and proximate result of Wisner Baum's conduct, Plaintiff and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

115.   In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Wisner Baum to, *inter alia*, strengthen its data

security systems and monitoring procedures, conduct periodic audits of those systems, and provide credit monitoring and identity theft insurance to Plaintiff and Class Members.

### THIRD CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### (Plaintiff on behalf of the Class)

116.　Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

117.　Plaintiff and Class members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

118.　As a provider of legal services and a recipient of consumers' Private Information, Defendant has a fiduciary relationship to its consumers, including Plaintiff and Class members.

119.　Because of that fiduciary relationship, Defendant was provided with and stored private and valuable Private Information related to Plaintiff and the Class. Plaintiff and the Class were entitled to expect their information would remain confidential while in Defendant's possession.

120.　Defendant owed a fiduciary duty under common law to Plaintiff and Class members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

121.　As a result of the parties' fiduciary relationship, Defendant had an obligation to maintain the confidentiality of the information within Plaintiff's and Class members' Private Information.

122.　Defendant's consumers, including Plaintiff and Class members, have a

privacy interest in personal financial matters, and Defendant had a fiduciary duty not to such personal data of its consumers.

123.   As a result of the parties' relationship, Defendant had possession and knowledge of confidential Private Information of Plaintiff and Class members, information not generally known.

124.   Plaintiff and Class members did not consent to nor authorize Defendant to release or disclose their Private Information to unknown criminal actors.

125.   Defendant breached its fiduciary duties owed to Plaintiff and Class members by, among other things:

    a.    mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of Private Information;

    b.    mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

    c.    failing to design and implement information safeguards to control these risks;

    d.    failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures;

    e.    failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

    f.    failing to detect the breach at the time it began or within a reasonable time thereafter; and

    g.    failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive Private Information.

126.   But for Defendant's wrongful breach of its fiduciary duties owed to

Plaintiff and Class members, their Private Information would not have been compromised.

127.   As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injuries, including:

a.   Theft of their Private Information;

b.   Costs associated with the detection and prevention of identity theft and unauthorized use of their Private Information;

c.   Costs associated with purchasing credit monitoring and identity theft protection services;

d.   Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.   Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.   The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

g.   Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's data against theft and not allow access and misuse of their data by others;

h.   Continued risk of exposure to hackers and thieves of their Private Information, which remains in Defendant's possession and is subject to

further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's data; and

i.   Emotional distress from the unauthorized disclosure of Private Information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff.

128.   As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief as follows:

a.   For an Order certifying this action as a Class action and appointing Plaintiff as a Class Representative and his counsel as Class Counsel;

b.   For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff and Class members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class members;

c.   For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Personal Information compromised during the Data Breach;

d.   For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e.   Ordering Defendant to pay for not less than three years of credit

monitoring services for Plaintiff and the Class;

f.    For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g.    For an award of punitive damages, as allowable by law;

h.    For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i.    Pre- and post-judgment interest on any amounts awarded; and,

j.    Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all claims so triable.

Dated this 4th day of February 2026.

*/s/Eric Lechtzin*
Eric Lechtzin (I.D. # 248958)
Marc H. Edelson (*Pro Hac Vice* anticipated)
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Facsimile: (267) 685-0676
elechtzin@edelson-law.com
medelson@edelson-law.com